IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| **TRISTAN BOOKER, ET AL.** | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | No. 14-cv-5242 |
| | : | |
| **BANGOR AREA SCHOOL DISTRICT,** | : | |
| | : | |
| Defendant. | : | |

# M E M O R A N D U M

**Stengel, J.**                                                                                                          **March 24, 2015**

This is Title VI racial discrimination action brought by three former students of the Bangor Area School District, all of whom are African American. All three allege that they were subjected to harassment based on their race while they attended Bangor Area public schools. They allegedly brought the misconduct to the attention of school administrators, who failed to appropriately address the behavior. The defendant moves to dismiss one student J.W. from the action, arguing that his allegations do not pass muster under Rule 12(b)(6). For the reasons stated below, I will deny this motion.

## I.      Background[1]

J.W. is a fourteen-year-old minor, residing with his parents in the Bangor Area School District. In 2010, his family moved from New York State to Upper Bethel, Pennsylvania. He was enrolled as a student in the Bangor Area School District from January 2011 through the fall of 2014. He attended fifth and sixth grade at DeFranco

---

[1] Information in this section is taken from the first amended complaint. Doc. No. 11.

1

Elementary School and seventh and eighth grade at Bangor Area Middle School. He is currently in ninth grade. J.W. was one of only a few African-American students in those schools. At both schools, he claims he was subjected to racial discrimination by students and staff. J.W. withdrew as a student in the early part of the 2014-2015 school year because of the "pervasive and unrelenting racial harassment" he experienced.

J.W. alleges that he was subjected to racially-motivated taunting by white students. He and his parents allegedly reported these incidents to school administrators. The school officials allegedly failed to take remedial actions. J.W. offers several examples of this harassment. On several occasions, he was called "nigger" and subjected to other racist comments by peers in both schools. In seventh grade at Bangor Middle School, J.W. was called "safe" while playing a game in gym class. Another student J.C. retorted "of course he's safe because he's black." In eighth grade, a student K.F. asked J.W., in a derogatory tone, if he liked eating watermelon and drinking grape soda, thereby referencing African-American stereotypes.

In music class, another eighth grade student J.L. stated that "the only music Black people know is rap music." He then looked directly at J.W. Thereafter, the music teacher allowed students to sing and chant songs promoting the Ku Klux Klan (KKK). During this singing, J.L. announced, "I'm racist and proud." He then looked at J.W. in an intimidating manner. J.W. and his parents registered a complaint with middle school officials. The assistant principal told them that the song was "just a silly song with a few lines."

J.W. alleges that he was also subjected to racially-discriminatory behavior by teachers. He claims that his sixth grade math teacher ignored and refused to call on him when he volunteered in class. She also did not correct an erroneous grade. This behavior was allegedly different than her treatment of similarly-situated white students in her classroom. In eighth grade, J.W. was reassigned to a homeroom for underperforming students. He believes this change was made solely based on his race. His academic performance began to suffer as a result of the change.

While in seventh grade, J.W. passed a group of teachers who were discussing a celebrity's buttocks. As he walked past, one teacher pointed directly at J.W. and said, "well he doesn't count!" J.W. felt publicly humiliated. He alleges the comment related to his race. J.W. reported the incident to both the principal and assistant principal. No remedial action was taken.

These allegations are similar to ones made by the other two plaintiffs in this action. J.W., along with the two other former students, filed this action on September 12, 2014. On November 24, 2014, the defendant moved to dismiss under Rule 12(b)(6). On December 15, 2014, the plaintiffs filed an amended complaint.[2] The defendant moves to dismiss J.W. only, arguing that his factual allegations are not enough to state a claim under Title VI.

---

[2] The defendant states that the amended complaint was filed without a court order, implying it was untimely. The amended complaint was filed within 21 days of the motion to dismiss. See Fed. R. Civ. P. 6(a)(1). No court order was needed. See Fed. R. Civ. P. 15(a)(1)(B). The amended complaint was timely.

## II.   Standard of Review

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted examines the legal sufficiency of the complaint.[3] Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The factual allegations must be sufficient to make the claim for relief more than just speculative. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether to grant a motion to dismiss, a federal court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Id.; see also D.P. Enters. v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

The Federal Rules of Civil Procedure do not require a plaintiff to plead in detail all of the facts upon which she bases her claim. Conley, 355 U.S. at 47. Rather, the Rules require a "short and plain statement" of the claim that will give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. Id. The "complaint must allege facts suggestive of [the proscribed] conduct." Twombly, 550 U.S. at 564. Neither "bald assertions" nor "vague and conclusory allegations" are accepted as true. See Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997); Sterling v. Se. Pa. Transp. Auth., 897 F. Supp. 893 (E.D. Pa. 1995). The claim must contain enough factual matters to suggest the required elements of the claim or to "raise a reasonable expectation

---

[3] In deciding a motion to dismiss, the court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). The court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. Id.

4

that discovery will reveal evidence of" those elements. Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556).

A court "may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Brown v. Card Serv. Ctr., 464 F.3d 450, 456 (3d Cir. 2006)(quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

### III. Discussion

Title VI prohibits intentional discrimination based on race in any program receiving federal funding.[4] See 42 U.S.C.A. § 2000d; Alexander v. Choate, 469 U.S. 287, 293 (1985); Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 562 (3d Cir.2002)(citing Alexander v. Sandoval, 532 U.S. 275, 281 (2001)). Under Title VI, a school district may be liable for money damages if it fails to address a so-called "racially hostile environment." See Saxe v. State College Area School Dist., 240 F.3d 200, 205 (3d Cir. 2001); Whitfield v. Notre Dame Middle School, 412 Fed. Appx. 517, 521(3d Cir. Jan. 12, 2011). In order to establish a "hostile environment" claim, a plaintiff must show that: 1) the school district was "deliberately indifferent" to known acts of harassment by teachers or peers; and 2) the harassment was "so severe, pervasive, and objectively offensive that it effectively bar[red] the victim's access to an educational opportunity or

---

[4] Specifically, section 601 of Title VI of the Civil Rights Act provides: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C.A. § 2000d.

benefit."[5] Davis, as Next Friend of LaShonda D. v. Monroe County Bd. of Educ., 526 U.S. 629, 633, 648 (1999). See also Zeno v. Pine Plains Cent. Sch. Dist., 702 F.3d 655, 664-65 (2d Cir. 2012).

### a. Allegations Showing "Deliberate Indifference" of Known Acts

J.W. and his parents allege they reported several acts of inappropriate behavior by students to school administrators at both DeFranco and Bangor Middle School. Yet, no remedial actions were taken, and the behavior went unchecked. When they reported the incident involving the KKK song, the school administrator essentially blew them off, saying it was "just a silly song with a few lines." A school district's failure to discipline a harassing student or prevent future harassment (i.e. separating the students) is evidence of deliberate indifference. See Davis, 526 U.S. at 635. These allegations are enough to show deliberate indifference by the defendant at the motion to dismiss stage.

### b. Allegations of Actionable Harassment

To establish the second Davis prong, the plaintiff alleges he was subjected to several incidents of racial harassment from grades five through eight by both students and teachers. To determine whether the conduct rises to the level of "harassment" that is "so severe, pervasive, and objectively offensive" to warrant relief, a court should consider the "constellation of surrounding circumstances, expectations, and relationships [of the alleged behavior]… including, but not limited to, the ages of the harasser and the victim and the number of individuals involved…." Davis, 526 U.S. at 651(citations omitted).

---

[5] This, of course, assumes that the plaintiff is a member of a protected class and was qualified to continue pursuing available educational opportunities. See Manning v. Temple Univ., No. 03-4012, 2004 WL 3019230, *5 (E.D. Pa. 2004)(citing Bell v. Ohio State Univ., 351 F.3d 240, 252-53 (6th Cir. 2003)). J.W. is clearly a member of a protected class as an African American and was not barred from attending the defendant's schools.

J.W. was only in elementary school and middle school when the bullying occurred. He was still relatively young and less able to protect himself from harassment than older students might be. Some of this bullying occurred under the watchful eye of his teachers. The instance involving the singing of a KKK song involved several students, one of which made his racial bias clear. His music teacher was allegedly present for this incident and condoned this behavior. The allegations were not simply isolated to one student or classroom but included several different students and teachers at two different Bangor Area public schools. The harassment also took place over the span of three years.[6] Several instances included the use of racial slurs or stereotypes by other students. One instance also involved a teacher commenting on J.W.'s buttocks in front of a group of other teachers.[7] Considering all reasonable inferences in favor of the plaintiff and viewing all factual allegations as true, the plaintiff has offered enough factual evidence to show the alleged "harassment" is "severe, pervasive, and objectively offensive" in order to withstand a motion to dismiss.[8]

---

[6] See Zeno v. Pine Plains Cent. Sch. Dist., 702 F.3d 655, 666-67 (2d Cir. 2012)(finding jury verdict for student under Title VI appropriate when student subjected to repeated peer taunting, including racial epithets and racially motivated threats, over three year period).

[7] Harassment by a teacher, as opposed to a student, is considered more egregious and offensive. See Davis, 526 U.S. at 651 ("Peer harassment, in particular, is less likely to satisfy these requirements than is teacher-student harassment.").

[8] The defendant argues that the allegations are not severe, pervasive, or offensive enough to state a claim. It cites to Whitfield v. Notre Dame Middle School, an unpublished Third Circuit case, to support this argument. 412 Fed. Appx. 517(3d Cir. 2011). Whitfield is not helpful in deciding this motion. Whitfield involved an appeal of a motion for summary judgment with a more much factually developed record, specifically regarding the actions taken by the defendant. Id. at 519. J.W. has alleged that the defendant has not taken corrective actions to address the racially hostile environment prevalent in its schools. At this point, I am required to consider this factual allegations as true and draw all reasonable inferences in the light most favorable to the plaintiff. Factually, Whitfield is also not entirely on point. While Whitfield involved bullying that was racially motivated, none of the teasing or name calling in that case included the use of racial epithets. Id. at 519-20. Compare Monteiro v. Tempe Union High Sch. Dist., 158 F.3d 1022, 1032-35 (9th Cir.1998)(finding that that allegations of a student repeatedly being called "nigger"—"the most

The plaintiff has also alleged that the "hostile environment" constructively barred him from the same educational access as his white peers, such that he was forced to withdraw earlier in this school year. Prior to withdrawing, the plaintiff alleges that his academic performance began to suffer after he was placed in an underperforming homeroom. The bar to educational access does not need to involve physical exclusion; the harassment can simply undermine or detract from the victim's educational experience "effectively den[ying] equal access to an institution's resources and opportunities." Davis, 526 U.S. at 651.  Evidence of barred access to education may be a substantial drop in grades or deterioration in a student's mental health. See id. at 634 (explaining that victim's high grades had dropped and she had written a suicide note). The plaintiff's allegations show that the harassment interfered with his right to an equal education.

The defendant argues that the plaintiff has failed to establish that the differential treatment by his teachers was racially motivated. Even if it were racially motivated, the defendant argues that it was not "so severe, pervasive, and objectively offensive" to deprive J.W. of educational opportunities. Taking all of the allegations together and drawing all reasonable inferences in favor of the plaintiff, I cannot say that the teachers' actions were not racially motivated. This is a question to be answered in discovery.[9]

---

noxious racial epithet in the contemporary American lexicon"—and of the school district's failure to address this behavior was enough to state a hostile environment claim under Rule 12(b)(6)).

[9] The defendant supports this argument with a case from the Middle District of Pennsylvania, Bridges ex rel. D.B. v. Scranton School District, 3:CV-12-2531, 2014 WL 5795653 (M.D. Pa. Nov. 6, 2014). That case is not very helpful for this motion. It was a motion for summary judgment made after the factual record had been fully developed. The plaintiff, nor this court, can necessarily know the motivations for his teachers' actions without further discovery. At this stage, I am required to draw all reasonable inferences in the light most favorable to the plaintiff.

Overall, plaintiff J.W. has alleged sufficient facts to state a plausible Title VI claim.[10]

### IV.  Conclusion

For the foregoing reasons, I will deny the defendant's motion to dismiss J.W. from this action.

An appropriate Order follows.

---

[10] See Fennell v. Marion Ind. Sch. Dist., 963 F.Supp.2d 623, 644–46 (W.D. Tex. 2013)(denying a motion to dismiss a Title VI claim when students alleged frequently being called racial slurs and differential treatment by teachers).